655 So.2d 525 (1995)
Daniel GRIFFIN, Jr. and Lydia Griffin, His Wife
v.
DANOS AND CUROLE MARINE CONTRACTORS, INC. and The Gray Insurance Company.
No. 94 CA 1789.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*526 Gary W. Bizal, Duilio A. Espinosa-Montalban, New Orleans, for plaintiff-appellee Daniel Griffin, Jr.
Phillip E. Henderson, Houma, for defendants-appellants Danos & Curole Marine Contractors, Inc. and The Gray Ins. Co.
Before WATKINS and FOGG, JJ., and TANNER[1], J. Pro Tem.
FOGG, Judge.
Danos and Curole Marine Contractors, Inc. (Danos and Curole), and its insurer. The Gray Insurance Company, appeal a judgement rendered against them in a tort suit in favor of Daniel Griffin, Jr., the plaintiff. Finding that the trial court erred in finding that Danos and Curole owed a duty to the plaintiff, we reverse.
The plaintiff injured his back on June 18, 1990, while making a delivery for his employer, Swisco, Inc. (Swisco), to a customer, Danos and Curole. The plaintiff filed suit against Danos and Curole and its insurer, contending that Danos and Curole voluntarily and gratuitously assumed a duty to load and unload the plaintiff's delivery truck and failed to give the plaintiff reasonable notice that this assistance would not be given on the day of the accident. The plaintiff alleged that he injured his back while loading his truck unassisted.[2] Following a jury trial, the jury answered interrogatories finding that Danos and Curole's negligence was a cause of the plaintiff's damages, that the plaintiff and Swisco were not negligent, and awarding the plaintiff damages. The trial court rendered judgment in conformity with the jury's verdict.
On appeal, the defendants contend that the trial judge erred in denying the defendants' motions for directed verdict at the close of the plaintiff's case and at the end of the trial. The defendants further contend that the trial court erred in denying their motion for judgment notwithstanding the verdict, and alternatively, for a new trial. Finally, the defendants contend that the trial court's jury instructions were erroneous.
At the trial, the plaintiff's only witness concerning liability was the plaintiff himself. The defense testimony was supplied by several former Swisco employees as well as two Danos and Curole employees. The testimony at trial revealed the following. The plaintiff began working for Swisco in March, 1990, as the "hotshot" truck driver. The "hotshot" truck was used to deliver welding supplies such as oxygen and acetylene in cylinders to customers on an as-needed basis. A steel plate on hinges on the back of the "hotshot" truck flapped down to make a kind of slide so that the driver could slide the oxygen and acetylene cylinders (which when empty weigh 150 pounds and 200-220 pounds, respectively) up and down by hand. Swisco had two other delivery trucks with hydraulic lifts which were used for regular delivery routes. The route trucks regularly went to Danos and Curole on Wednesdays to deliver full cylinders and pick up empty cylinders. The plaintiff underwent a week and a half of training for his job on the "hotshot" truck.
At the time of the accident, Swisco had been delivering to Danos and Curole for a total of nine or ten years; however, for approximately one year prior to the plaintiff's *527 employment with Swisco, Danos and Curole was not Swisco's customer. When Swisco reacquired Danos and Curole as a customer, the plaintiff made the first delivery to Danos and Curole. There was no a written contract between Swisco and Danos and Curole.
According to the plaintiff's testimony, on his first delivery to Danos and Curole about four months before the accident, Al Bruce, the foreman, told him that a Danos and Curole employee would load and unload the truck with a forklift. The plaintiff delivered to Danos and Curole in the "hotshot" truck two and three times a week, and he testified that the Danos and Curole employees always helped him load and unload.
The plaintiff testified that on his delivery of June 18th, Lincoln "Jay" Galliano, the only Danos and Curole employee he could locate on the premises, refused to help him and, although he searched, he could not find anyone else to do so. The plaintiff testified that Galliano told him that if he could not load and unload the truck, "they would find somebody to do it for me." Because the plaintiff did not want to lose the Danos and Curole account, which he feared might lead to his losing his job, he loaded his truck himself, injuring his back while loading the empty cylinders onto the truck.
According to the plaintiff, when other customers did not have a loading dock or forklift, they helped him load and unload. He stated that he never loaded and unloaded alone, nor did he ever see anyone at Swisco do so. While the plaintiff did not believe that unloading alone was dangerous, he did think it was dangerous to load unassisted. The plaintiff testified that his responsibility was to unload and load according to the customer's instructions. However, the plaintiff also acknowledged that it was his job to unload and load the truck. The plaintiff thought he was required to pick up the empty cylinders whenever he visited a customer. However, the plaintiff also testified that he knew that a regular route truck brought new cylinders and picked up the empty ones from Danos and Curole once a week.
Rory Sons, a former "hotshot" truck driver for Swisco, and Ronald Arcement, the former manager of Swisco who had also driven the "hotshot" truck in the past, both testified that the driver's job is to load and unload the "hotshot" truck. Sons and Arcement testified that they both had loaded and unloaded the "hotshot" truck alone, that Swisco expected the "hotshot" driver to do this alone, that the "hotshot" driver was trained to load and unload, and that normally no help was given the "hotshot" driver. Even if two men were aboard the "hotshot" truck, such as an experienced deliveryman and a trainee, the lifting of the cylinders was still handled by only one man. Sons testified that when he had delivered to Danos and Curole, he normally loaded and unloaded the cylinders alone; he testified that if someone was around and if it was not too busy, sometimes a Danos and Curole employee would help him with the forklift.
Although the plaintiff testified that he informed Arcement of Danos and Curole's assistance with the forklift, Arcement testified that he was not aware of any arrangements with Danos and Curole for help in offloading. Arcement said deliveries were mostly to places which did not have loading docks or where forklifts were not used to assist, so that the cylinders had to be lifted off the ground.
Eno Boudreaux, one of Swisco's owners who had been in the welding supply business for thirty years, testified that the driver had the responsibility to load and unload the trucks. Boudreaux also testified that he was not aware of any agreement between Danos and Curole and Swisco for Danos and Curole to assist in loading and unloading Swisco trucks. Wayne Boudreaux, another former Swisco employee who occasionally drove the "hotshot" truck, also testified that as the "hotshot" truck driver, he loaded and unloaded the cylinders by hand from the ground by himself most of time; he added that even with two men, one man still lifts the cylinders alone.
Galliano, the Danos and Curole employee whom the plaintiff alleged refused to help him, denied that he ever told the plaintiff that he could not help him. He testified that if he was available, he helped the plaintiff unload the truck. Galliano could not recall the foreman telling the plaintiff that the forklift *528 would always be available. Bruce, the foreman, denied that he ever told the plaintiff that Danos and Curole would load and unload the Swisco trucks with its forklift. Bruce explained that if someone was available, a Danos and Curole employee would help the Swisco driver, not out of any obligation but because they were "just trying to be helpful and being a nice guy."
In resolving a negligence case, a duty-risk analysis is helpful. In a duty-risk analysis, four issues are considered:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk and harm caused within the scope of protection afforded by the duty breached?
For a plaintiff to recover under a negligence theory, all four inquiries must be affirmatively answered. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La. 1993).
Cause-in-fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, then such conduct is a cause-in-fact.6 To the extent that the defendants' actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met. Faucheaux, 615 So.2d at 292. Duty is a question of law. The inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Faucheaux, 615 So.2d at 292.
Even if we assume that Danos and Curole's conduct was a cause-in-fact of the plaintiff's injuries, we find that Danos and Curole owed the plaintiff no duty. Simply because Danos and Curole's foreman may have told the plaintiff its employees would assist him in his job of loading and unloading his truck, this did not impose a duty on Danos and Curole to render such assistance or to notify the plaintiff well in advance that its employees would not be helping him. All the testimony, even that of the plaintiff, is that the delivery truck driver had the responsibility of loading and unloading the truck. Furthermore, the plaintiff was trained to load and unload the truck by his employer. Therefore, the failure of Danos and Curole to help the plaintiff load and unload the truck does not render it liable for the injuries the plaintiff sustained when he was performing his job of loading the truck. The failure of Danos and Curole to help the plaintiff load the truck or to notify him in advance of its inability to assist resulted in the plaintiff's having to perform his job in the manner which was expected by his employer and for which the plaintiff had been trained.
The cases which the plaintiff cites to support his theory of liability are distinguishable.[3] In the case of Crane v. Exxon Corporation, 613 So.2d 214, 221 (La.App. 1st Cir. 1992), writs denied in part, granted in part on other grounds, and remanded, 620 So.2d 858 (La.1993) and the cases referred to therein, the courts imposed liability on defendants who gratuitously undertook duties by rendering services to the plaintiffs because they recognized those services were necessary for the plaintiffs' protection. In this case, it was not necessary for Danos and Curole to protect the plaintiff from the performance of his job.
Because we do not find that the actions of Danos and Curole can form the basis for a finding of liability to the plaintiff, we must reverse the judgment of the trial court. Having reached this result, we need not discuss the other issues raised by the defendants.
For these reasons, the judgment of the trial court in favor of the plaintiff against Danos and Curole and its insurer is reversed. Costs of this appeal are to be paid by the plaintiff.
REVERSED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] At the trial, the plaintiff dismissed Lydia Griffin's loss of consortium claim, which had been asserted in the plaintiff's petition.
[3] The plaintiff in brief also relies on two unpublished decisions of this court. Under Rule 2-16.3 of the Uniform Rules-Courts of Appeal, in pertinent part, "Opinions marked `Not Designated for Publication' shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation."